**18SL-CC01802**

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

## MISSOURI CIRCUIT COURT
## TWENTY-FIRST JUDICIAL CIRCUIT
## ST. LOUIS COUNTY

BARBARA J. BRANT by and through her
representative, ROBERT BRANT, ROBERT
BRANT surviving spouse of BARBARA J.
BRANT, on behalf of all legal heirs of
BARBARA J. BRANT,
RITA WATSON, by and through her
representative ROBERT WATSON, ROBERT
WATSON, surviving spouse of RITA
WATSON, on behalf of all legal heirs of RITA
WATSON,
ROBERT LEWIS-JACKSON,
ROBERT QUIGG,
JUDY ANDERSON,
BRENDA MONTEITH,
RAYMOND GODIN by and through his
representative, LEIGH GODIN, LEIGH
GODIN surviving spouse of RAYMOND
GODIN, on behalf all legal heirs of
RAYMOND GODIN,
COBY MURRELL,
SANDI POLLARD,
KENNETH W. SAUNSTAIRE,
MARCUS L. HAYNES,
CHARLES RAYBURN EVANS by and though
his representative, AVA EVANS, AVA
BURNS, surviving spouse of CHARLES
RAYBURN EVANS, on behalf of all legal heirs
of CHARLES RAYBURN EVANS,
RYAN SHARP,
GERALD PARKS,
JESSIE STANLEY,
ORVAL FRAZIER,
KIMBERLY A. JUAREZ,
SONYA MELTON-PARSON,
NANCY CROFT,
MILAN CAIN,
DALE KUEFLER,
SHELBY HENRY,
CAROLYN FASHBAUGH,
THOMAS SMITH,
JIM WILLIAMS, by and through his
representative JANET WILLIAMS, JANET

Case No._____

Division No. _____

**JURY TRIAL DEMANDED**

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

WILLIAMS, surviving spouse of JIM
WILLIAMS, on behalf of all legal heirs of JIM
WILLIAMS,
BOB COLLINS,
CHARLES JAMES,
DORIS THOMAS,
DOWYAL FREEMAN,
PATRICK WELLMAN,
ANDREW LEWIS, by and through his
representative KIM B. LEWIS,  KIM B. LEWIS
surviving parent of ANDREW LEWIS, on
behalf of all legal heirs of ANDREW LEWIS,
ROBERT WOLFE,
JAMES MORSE,
RODNEY JAMES DUNCKLEE,
ERMA HUDSON by and through her
representative RONALD GRAY, RONALD
GRAY surviving heir of ERMA HUDSON, on
behalf of all legal heirs of ERMA HUDSON,
CONNY PHIPPS,
DILLON MOORE,
DALE JESSEN,
STEPHANIE MICHNAL,
CYNTHIA HIVNER,
CHARLES TINER,
ROBERT SIMONETTI,
KENNETH CROOKS,
DONALD CHRISTIAENS,
TIMOTHY P. MERAY,
KARL A. BOSCHERT,
BILL ALLMON,
CHARLES WILLSON,
GARY HAMPTON,
KIP MILLER,
DONNA BAYLIN,
DAVID DAVIS,
BRENT POPP,
KAREN LANDEAU,
WILLIAM D. NOEL,
RANNEL PRESNELL,
JOHN MAYO,
BETTY HILL,
MYRON PAYNE,
RAYMOND TURNER, by and through his
representative, MARY DAVIS, MARY DAVIS
surviving heir of RAYMOND TURNER, on

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

behalf of all legal heirs of RAYMOND
TURNER,
ROBERT EASTERDAY,
ANTONIO MEZZANOTTE,
BRETT MOLK,
WILLIAM COOPER,
JOHN BADTKE,
GEORGEANNA IRWIN,
JOE ADAMS,
JOYCE RIEDLIN,
ALICIA RAINWATER,
RONNIE JOHNSON,
DIANE ADAMS,
PAMELA GAYMAN,
SIMUEL MCLAUGHLIN,
ANTHONY ABRIL,
JOHN BERRY,
JOHN DENEAU,
LARRY CAMERON,
TINA KNIGHT,
BOBBY TATUM,
STEPHEN KIELE,
JANET CURTIS,
KENNETH P. NOWATZKE, by and through
his representative, PHYLLIS NOWATZKE,
PHYLLIS NOWATZKE surviving spouse of
KENNETH P. NOWATZKE, on behalf of all
legal heirs of KENNETH P. NOWATZKE,
LUCY NAPIER,
PATRICIA A. GOLDMAN,
KATHLEEN BENJAMIN,
TONYA LYONS,
ADAM ENGLEBRIGHT, by and through his
representative, TEDRA ENGLEBRIGHT,
TEDRA ENGLEBRIGHT surviving heir of
ADAM ENGLEBRIGHT, on behalf all legal
heirs of ADAM ENGLEBRIGHT,
ANN JONES,
LARRY GOODMAN,
JAMES JOHNSON,
CAROL PAULSEN,
ROBERT A. PASHKO,
WILLIE DAILEY,
RUSSEL CARTER,
CAROLINE HERRING,
OLIN BRUSE,

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

DAVID SANDRETTO,
GARY KREYE,
RUBEN PENA by and through his
representative VALERIE PENA, VALERIE
PENA surviving spouse of RUBEN PENA, on
behalf of all legal heirs of RUBEN PENA.

Plaintiffs,

**v.**

**MONSANTO COMPANY**

Serve:  Registered Agent
        CSC of St. Louis County, Inc.
        130 South Bemiston Avenue
        Suite 700
        Clayton, MO 63105

        Defendant.

**PETITION**

      COME NOW Plaintiffs, BARBARA J. BRANT by and through her representative,

ROBERT BRANT, ROBERT BRANT surviving spouse of BARBARA J. BRANT, on behalf of

all legal heirs of BARBARA J. BRANT, RITA WATSON, by and through her representative

ROBERT WATSON, ROBERT WATSON surviving spouse of RITA WATSON, on behalf of

all legal heirs of RITA WATSON, ROBERT LEWIS-JACKSON, ROBERT QUIGG, JUDY

ANDERSON, BRENDA MONTEITH, RAYMOND GODIN by and through his representative,

LEIGH GODIN, LEIGH GODIN surviving spouse of RAYMOND GODIN, on behalf all legal

heirs of RAYMOND GODIN, COBY MURRELL, SANDI POLLARD, KENNETH W.

SAUNSTAIRE, MARCUS L. HAYNES, CHARLES RAYBURN EVANS by and though his

representative, AVA EVANS, AVA EVANS surviving spouse of CHARLES RAYBURN

EVANS, on behalf of all legal heirs of CHARLES RAYBURN EVANS, RYAN SHARP,

GERALD PARKS, JESSIE STANLEY, ORVAL FRAZIER, KIMBERLY A. JUAREZ,SONYA

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

MELTON-PARSON, NANCY CROFT, MILAN CAIN, DALE, KUEFLER, SHELBY HENRY,CAROLYN FASHBAUGH, THOMAS SMITH, JIM WILLIAMS, by and through his representative JANET WILLIAMS, JANET WILLIAMS surviving spouse of JIM WILLIAMS, on behalf of all legal heirs of JIM WILLIAMS, BOB COLLINS, CHARLES JAMES, DORIS THOMAS, DOWYAL FREEMAN, PATRICK WELLMAN, ANDREW LEWIS, by and through his representative KIM B. LEWIS, KIM B. LEWIS surviving parent of ANDREW LEWIS, on behalf of all legal heirs of ANDREW LEWIS, ROBERT WOLFE, JAMES MORSE, RODNEY JAMES DUNCKLEE, ERMA HUDSON by and through her representative RONALD GRAY, RONALD GRAY surviving heir of ERMA HUDSON, on behalf of all legal heirs of ERMA HUDSON, CONNY PHIPPS, DILLON MOORE, DALE JESSEN, STEPHANIE MICHNAL, CYNTHIA HIVNER, CHARLES TINER, ROBERT SIMONETTI, KENNETH CROOKS, DONALD CHRISTIAENS, TIMOTHY P. MERAY, KARL A. BOSCHERT, BILL ALLMON, CHARLES WILLSON, GARY HAMPTON, KIP MILLER, DONNA BAYLIN, DAVID DAVIS, BRENT POPP, KAREN LANDEAU, WILLIAM D. NOEL, RANNEL PRESNELL, JOHN MAYO, BETTY HILL, MYRON PAYNE, RAYMON TURNER, by and through his representative, MARY DAVIS, MARY DAVIS surviving heir of RAYMON TURNER, on behalf of all legal heirs of RAYMON TURNER, ROBERT EASTERDAY, ANTONIO MEZZANOTTE, BRETT MOLK, WILLIAM COOPER, JOHN BADTKE, GEORGEANNA IRWIN, JOE ADAMS, JOYCE RIEDLIN, ALICIA RAINWATER, RONNIE JOHNSON, DIANE ADAMS, PAMELA GAYMAN, SIMUEL MCLAUGHLIN, ANTHONY ABRIL, JOHN BERRY, JOHN DENEAU, LARRY CAMERON, TINA KNIGHT, BOBBY TATUM, STEPHEN KIELE, JANET CURTIS, KENNETH P. NOWATZKE, by and through his representative, PHYLLIS NOWATZKE, PHYLLIS

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

NOWATZKE, surviving spouse of KENNETH P. NOWATZKE, on behalf of all legal heirs of KENNETH P. NOWATZKE, LUCY NAPIER, PATRICIA A. GOLDMAN, KATHLEEN BENJAMIN, TONYA LYONS, ADAM ENGLEBRIGHT, by and through his representative, TEDRA ENGLEBRIGHT, TEDRA ENGLEBRIGHT surviving heir of ADAM ENGLEBRIGHT, on behalf all legal heirs of ADAM ENGLEBRIGHT, ANN JONES, LARRY GOODMAN, JAMES JOHNSON, CAROL PAULSEN, ROBERT A. PASHKO, WILLIE DAILEY, RUSSEL CARTER,     CAROLINE HERRING, OLIN BRUSE, DAVID SANDRETTO, GARY KREYE, RUBEN PENA by and though his representative VALRIE PENA, VALRIE PENA surviving spouse of RUBEN PENA, on behalf of all legal heirs of RUBEN PENA by and through their counsel, and for their cause of action against defendant Monsanto Company state to the Court as follows:

## INTRODUCTION

Plaintiffs bring this cause of action against Defendant pursuant to Rule 52.05(a) of the Missouri Rules of Civil Procedure, as their claims arise out of the same series of transactions and occurrences, and their claims involve common questions of law and/or fact. All claims in this action are a direct and proximate result of Defendant's negligent, willful, and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, and/or sale of Roundup and/or other Monsanto glyphosate-containing products ("Roundup"). All Plaintiffs in this action seek recovery for damages as a result of developing Non-Hodgkin's Lymphoma ("NHL"), which was directly and proximately caused by such wrongful conduct by Defendant, the unreasonably dangerous and defective nature of Roundup, and its active ingredient, glyphosate, and the attendant effects of developing NHL. No Plaintiff knew of an association between exposure to Roundup® and the increased risk of

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

developing NHL until well after July 29, 2015, when the International Agency for Research on Cancer ("IARC"), an agency of the World Health Organization ("WHO"), first published its evaluation of glyphosate. All of the claims involve common questions of law and fact and share legal and medical issues that arise out of all of the Plaintiffs' exposures to Roundup.

I.        **THE PARTIES**

1.        Plaintiff  Robert Brant is the husband of Barbara J. Brant, deceased and lives in Kokomo,Indiana. He is the next of kin and Personal Representative of the Estate of Barbara J. Brant, a Indiana Estate. At the time of her death, Ms. Brant was a resident of Indiana. Ms. Brant was first exposed in approximately 1975 in the City of Kokomo, through approximately 1999, and was diagnosed with a form of Non-Hodgkin's lymphoma. Ms. Miller died of her injuries in 1999.

2.        Plaintiff  Robert Watson is the husband of Rita Watson, deceased and lives in Pontiac, Illinois. He is the next of kin and Personal Representative of the Estate of Rita Watson, a Illinois Estate. At the time of her death, Ms. Watson was a resident of Illinois. Ms. Watson was first exposed in approximately 1980 in the City of Pontiac, through approximately 2014, and was diagnosed with a form of Non-Hodgkin's lymphoma. Ms. Watson died of her injuries in 2014.

3.        Plaintiff Robert Lewis-Jackson is and was at all relevant times a resident of Bastrop, Louisiana Plaintiff Lewis-Jackson was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1983 in the City of Bastrop through approximately 1985 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

4.        Plaintiff Robert Quigg is and was at all relevant times a resident of Hazelton, Pennsylvania Plaintiff Quigg was exposed to, purchased and used Roundup and/or other

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2012 in the City of Hazelton through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

5.     Plaintiff Judy Anderson is and was at all relevant times a resident of Gate City, Virginia Plaintiff Anderson was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1995 in the City of Gate City through approximately 2010 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

6.     Plaintiff Brenda Monteith is and was at all relevant times a resident of Marana, Arizona Plaintiff Monteith was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1996 in the City of Marana through approximately 2012 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

7.     Plaintiff  Leigh Godin is the wife of Raymond Godin, deceased and lives in Montgomery, Alabama.  She is the next of kin and Personal Representative of the Estate of Raymond Godin, a Alabama Estate. At the time of his death, Mr. Godin was a resident of Alabama. Mr. Godin was first exposed in approximately 1990 in the City of Montgomery, through approximately 2010, and was diagnosed with a form of Non-Hodgkin's lymphoma. Mr. Godin died of his injuries in 2010

8.     Plaintiff Coby Murrell is and was at all relevant times a resident of Cincinnati, Ohio Plaintiff Murrell was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2005 in the

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

City of Cincinatti through approximately 2010 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

9.      Plaintiff Sandi Pollard is and was at all relevant times a resident of Granby, Missouri Plaintiff Pollard was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 2011 in the City of Granby through approximately 2015 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

10.      Plaintiff Kenneth W. Saunstaire is and was at all relevant times a resident of  Wichita, Kansas  Plaintiff Saunstaire was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1990 in the City of Wichita through approximately 2000 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

11.      Plaintiff Marcus L. Haynes is and was at all relevant times a resident of Lenoir City, Tennessee Plaintiff Haynes was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2014 in the City of Lenoir City  through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

12.      Plaintiff  Ava Evans is the wife of Charles Rayburn Evans, deceased and lives in Senath, Missouri.  She is the next of kin and Personal Representative of the Estate of Charles Rayburn Evans, a Missouri Estate. At the time of his death, Mr. Evans was a resident of Missouri. Mr. Evans was first exposed in approximately 1989 in the City of Montgomery, through approximately 1995, and was diagnosed with a form of Non-Hodgkin's lymphoma. Mr. Evans died of his injuries in 2005

9

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

13.     Plaintiff Ryan Sharp is and was at all relevant times a resident of Vidalia, Louisiana. Plaintiff Sharp was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1990 in the City of Vidalia  through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

14.     Plaintiff Gerald Parks is and was at all relevant times a resident of Pass Christian, Mississippi. Plaintiff Parks was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1980 in the City of Pass Christian  through approximately1997 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

15.     Plaintiff Jessie Stanley is and was at all relevant times a resident of Harvey, Louisiana Plaintiff Stanley was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2010 in the City of Harvey  through approximately 2018 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

16.     Plaintiff Orval Frazier is and was at all relevant times a resident of Lacey, Washington Plaintiff Frazier was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1997 in the City of Lacy  through approximately 2004 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

17.     Plaintiff Kimberly A. Juarez is and was at all relevant times a resident of Sheridan, Oregon. Plaintiff Jaurez was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1990 in

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

the City of Sherifan  through approximately 1996 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

18.     Plaintiff Sonya Melton-Parson is and was at all relevant times a resident of Norfolk, Virginia. Plaintiff Melton-Parson was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1980 in the City of Norfolk  through approximately 1996 and was diagnosed with Non Hodgkin's  Lymphoma as a result of Roundup exposure.

19.     Plaintiff Nancy Croft is and was at all relevant times a resident of Elk Horn, Kentucky Plaintiff Croft was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1973 in the City of Elk Horn through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

20.     Plaintiff Milan Cain is and was at all relevant times a resident of Fort Collins, Colorado Plaintiff Cain was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1987 in the City of Fort Collins  through approximately 2015 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

21.     Plaintiff Dale Kuefler is and was at all relevant times a resident of Croswell, Michigan Plaintiff Kuefler was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1982 in the City of Croswell through approximately 1995 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

22.     Plaintiff Shelby Henry is and was at all relevant times a resident of Woodlawn, Tennessee Plaintiff Henry was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1978 in the City of Croswell through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

23.     Plaintiff Carolyn Fashbaugh is and was at all relevant times a resident of Blissfield, Michigan. Plaintiff Fashbaugh was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1994 in the City of Blissfield through approximately 2003 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

24.     Plaintiff Thomas Smith is and was at all relevant times a resident of Hagerman, Idaho Plaintiff Wells was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1998 in the City of Hagerman through approximately 2018 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

25.     Plaintiff  Janet Williams is the wife of Jim Williams deceased and lives in Mechanicsburgh, Pennsylvania.  She is the next of kin and Personal Representative of the Estate of Jim Williams, a Pennsylvania Estate. At the time of his death, Mr. Williams was a resident of Missouri. Mr. Williams was first exposed in approximately 1999 in the City of Mechanicsburgh, through approximately 2013, and was diagnosed with a form of Non-Hodgkin's lymphoma. Mr. Williams died of his injuries in 2015

26.     Plaintiff Bob Collins is and was at all relevant times a resident of Lebanon Junction, Kentucky. Plaintiff Collins was exposed to, purchased and used Roundup and/or other Monsanto

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

glyphosate-containing products ("Roundup").  He was first exposed in approximately 1978 in the City of Lebanon Junction through approximately 1982 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

27.     Plaintiff Charles James is and was at all relevant times a resident of Hartford, Kentucky. Plaintiff James was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1983 in the City of Hartford through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

28.     Plaintiff Doris Thomas is and was at all relevant times a resident of Flint, Michigan. Plaintiff Thomas was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1990 in the City of Flint through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

29.     Plaintiff Dowyal Freeman is and was at all relevant times a resident of Lawrence, Tennessee. Plaintiff Freeman was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He  was first exposed in approximately 1993 in the City of Lawrence through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

30.     Plaintiff Patrick Wellman is and was at all relevant times a resident of Centerfield, Utah. Plaintiff Wellman was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1997 in the City of Lawrence through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

31.     Plaintiff  Kim Lewis is the representative of Andrew Lewis deceased and lives in
Centerfield, Utah.  She is the next of kin and Personal Representative of the Estate of Andrew
Lewis, a Utah Estate. At the time of his death, Mr. Lewis was a resident of Utah. Mr. Lewis was
first exposed in approximately 1977 in the City of Centerfield, through approximately 2013, and
was diagnosed with a form of Non-Hodgkin's lymphoma. Mr. Lewis died of his injuries in 2014

32.     Plaintiff Robert Wolfe is and was at all relevant times a resident of Morristown,
Tennessee. Plaintiff Wolfe was exposed to, purchased and used Roundup and/or other Monsanto
glyphosate-containing products ("Roundup").  He was first exposed in approximately 1999 in the
City of Centerfield through approximately 2010 and was diagnosed with Non Hodgkin's
Lymphoma as a result of Roundup exposure.

33.     Plaintiff James Morse is and was at all relevant times a resident of Saint Charles,
Kentucky. Plaintiff Morse was exposed to, purchased and used Roundup and/or other Monsanto
glyphosate-containing products ("Roundup").  He was first exposed in approximately 2012 in the
City of Saint Charles through approximately 2013 and was diagnosed with Non Hodgkin's
Lymphoma as a result of Roundup exposure.

34.     Plaintiff Rodney James Duncklee is and was at all relevant times a resident of Lake
Geneva, Washington. Plaintiff Duncklee was exposed to, purchased and used Roundup and/or
other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in
approximately 1975 in the City of Lake Geneva through approximately 1980 and was diagnosed
with Non Hodgkin's Lymphoma as a result of Roundup exposure.

35.     Plaintiff  Ronald Gray is the representative of Erma Hudson, deceased and lives in
Hayward, California.  He is the next of kin and Personal Representative of the Estate of Erma
Hudson, a California Estate. At the time of her death, Ms. Hudson was a resident of California.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

Ms. Hudson was first exposed in approximately 1975 in the City of Hayward, through approximately 1995, and was diagnosed with a form of Non-Hodgkin's lymphoma. Ms. Hudson died of her injuries in 1996

36.    Plaintiff Conny Phipps is and was at all relevant times a resident of New Brunswick, New Jersey.  Plaintiff Phipps was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1999 in the City of New Brunswick through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

37.    Plaintiff Dillon Moore is and was at all relevant times a resident of Dallas, Texas. Plaintiff Moore was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2000 in the City of Dallas through approximately 2006 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

38.    Plaintiff Dale Jessen is and was at all relevant times a resident of Norfolk, Nebraska. Plaintiff Jessen was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2000  in the City of Norfolk through approximately 2006 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

39.    Plaintiff Stephanie Michnal and was at all relevant times a resident of Kalispell, Montana.  Plaintiff Michnal was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1990  in the City of Kalispell through approximately 1996 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

40.     Plaintiff Caroline Herring is and was at all relevant times a resident of Maggie Valley, North Carolina. Plaintiff Herring was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2001 in the City of Maggie Valley through approximately 2006 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

41.     Plaintiff Olin Bruse is and was at all relevant times a resident of Grimes, Iowa. Plaintiff Bruse was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1975 in the City of Grimes through approximately 2000 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

42.     Plaintiff Cynthia Hivner is and was at all relevant times a resident of Palmyra, Pennsylvania.  Plaintiff Hivner was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1972  in the City of Palmyra through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

43.     Plaintiff Charles Tiner is and was at all relevant times a resident of Hempstead, Texas. Plaintiff Tiner was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1995  in the City of Hempstead through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

44.     Plaintiff Robert Simonetti is and was at all relevant times a resident of Scottsdale, Arizona.  Plaintiff Simonetti was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

1975  in the City of Scottsdale through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

45.     Plaintiff Kenneth Crooks is and was at all relevant times a resident of Trout Run, Pennsylvania.  Plaintiff Crooks was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1969  in the City of Trout Run through approximately 2001 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

46.     Plaintiff Donald Christiaens is and was at all relevant times a resident of Grayslake, Illinois.  Plaintiff Christaiens was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1990  in the City of Grayslake through approximately 2018 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

47.     Plaintiff Gary Hampton is and was at all relevant times a resident of Cleveland, Ohio. Plaintiff Hampton was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1979 in the City of Cleveland through approximately 2015 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

48.     Plaintiff Timothy P. Meray is and was at all relevant times a resident of Northern Cambria, Pennsylvania.  Plaintiff Meray was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1972  in the City of Northern Cambria through approximately 2000  and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

49.     Plaintiff Karl A. Boschert is and was at all relevant times a resident of Portage Des Sioux, Missouri. Plaintiff Boschert was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1972  in the City of Portage Des Sioux through approximately 2000 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

50.     Plaintiff Bill Allmon is and was at all relevant times a resident of Asheboro, North Carolina. Plaintiff Allmon was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1974  in the City of Asheboro through approximately 2014 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

51.     Plaintiff Charles Willson is and was at all relevant times a resident of Enid, Oklahoma. Plaintiff Allmon was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1998 in the City of Enid through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

52.     Plaintiff  Valarie Pena  is the wife of Ruben Pena, deceased and lives in Seguin, Texas. She is the next of kin and Personal Representative of the Estate of Ruben Pena,, a Texas Estate. At the time of his death, Mr. Pena was a resident of Texas. Mr. Pena was first exposed in approximately 2008 in the City of Michigan City, through approximately 2016, and was diagnosed with a form of Non-Hodgkin's lymphoma. Mr. Pena died of his injuries in 2017

53.     Plaintiff Kip Miller is and was at all relevant times a resident of Las Vegas, Nevada. Plaintiff Miller was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1979  in the City of

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

Las Vegas through approximately 1997 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

54.     Plaintiff Donna Baylin is and was at all relevant times a resident of Canton, Georgia. Plaintiff Baylin was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1980  in the City of Canton through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

55.     Plaintiff David Davis is and was at all relevant times a resident of Beaumont, California. Plaintiff Davis was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2000  in the City of Beaumont through approximately 2003 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

56.     Plaintiff Brent Popp is and was at all relevant times a resident of Salt Lake City, Utah. Plaintiff Popp was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1974  in the City of Salt Lake City through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

57.     Plaintiff Karen Landeau is and was at all relevant times a resident of Mobile, Alabama. Plaintiff Landeau was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1999  in the City of Mobile through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

58.     Plaintiff William D. Noel is and was at all relevant times a resident of Mesa, Arizona. Plaintiff Noel was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2000  in the City of Mesa through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

59.     Plaintiff Rannel Presnell is and was at all relevant times a resident of Citronelle, Alabama.  Plaintiff Presnell was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1960  in the City of Citronelle through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

60.     Plaintiff John Mayo is and was at all relevant times a resident of Martin, Kentucky. Plaintiff Mayo was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2000  in the City of Martin through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

61.     Plaintiff Betty Hill is and was at all relevant times a resident of North Las Vegas, Nevada.  Plaintiff Hill was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1985  in the City of North Las Vegas through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

62.     Plaintiff Myron Payne is and was at all relevant times a resident of Bellefontaine, Ohio. Plaintiff Payne was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1976  in the City of

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

Bellefontaine through approximately 1980 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

63.     Plaintiff  Mary Davis is the wife of Raymond Turner deceased and lives in Forkland, Alabama.  She is the next of kin and Personal Representative of the Estate of Raymond Turner, a Alabama Estate. At the time of his death, Mr. Turner was a resident of Alabama. Mr. Turner was first exposed in approximately 2008 in the City of Forkland, through approximately 2011, and was diagnosed with a form of Non-Hodgkin's lymphoma. Mr. Turner died of his injuries in 2011

64.     Plaintiff Robert Easterday is and was at all relevant times a resident of St. Petersburg, Florida.  Plaintiff Easterday was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1995  in the City of St. Petersburg through approximately 2005 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

65.     Plaintiff Antonio Mezzanotte is and was at all relevant times a resident of Rochelle Park, New Jersey. Plaintiff Mezzanotte was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1998  in the City of  Rochelle Park through approximately 2016 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

66.     Plaintiff Brett Molk is and was at all relevant times a resident of Kenton, Ohio. Plaintiff Molk was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1974  in the City of Kenton through approximately 2016 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

67.     Plaintiff William Cooper is and was at all relevant times a resident of Houma, Louisiana. Plaintiff Cooper was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1978  in the City of Houma through approximately 2012 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

68.     Plaintiff Jon Badtke is and was at all relevant times a resident of Ripon, Wisconsin. Plaintiff Badtke was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1990  in the City of Ripon through approximately 2006 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

69.     Plaintiff Georgeanna Irwin is and was at all relevant times a resident of Odessa, Texas. Plaintiff Irwin was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1985  in the City of Odessa through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

70.     Plaintiff Joe Adams is and was at all relevant times a resident of Lancaster, California. Plaintiff Adams was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1975  in the City of Lancaster through approximately 2005 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

71.     Plaintiff David Sandretto is and was at all relevant times a resident of Port Charlotte, Florida. Plaintiff Sandretto was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1978 in the

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

City of Port Charlotte through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

72.     Plaintiff Joyce Riedlin is and was at all relevant times a resident of Erlanger, Kentucky. Plaintiff Riedlin was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1987 in the City of Erlanger through approximately 2000 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

73.     Plaintiff Alicia Rainwater is and was at all relevant times a resident of Newnan, Georgia. Plaintiff Rainwater was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1983 in the City of Newnan through approximately 2011 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

74.     Plaintiff Ronnie Johnson is and was at all relevant times a resident of Elsinore, Utah. Plaintiff Johnson was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1998 in the City of Elsinore through approximately 2010 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

75.     Plaintiff Diane Adams is and was at all relevant times a resident of Baltimore, Maryland Plaintiff Adams was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1986 in the City of Baltimore through approximately 2016 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

76.      Plaintiff Pamela Gayman is and was at all relevant times a resident of Rio Rancho, New Mexico Plaintiff Adams was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1980 in the City of Rio Rancho  through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

77.      Plaintiff Gary Kreye is and was at all relevant times a resident of Denver, Colorado. Plaintiff Kreye was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1998 in the City of Denver through approximately 2018 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

78.      Plaintiff Simuel McLaughlin is and was at all relevant times a resident of LaGrange, Georgia. Plaintiff McLaughlin was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1990 in the City of LaGrange through approximately 1992 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

79.      Plaintiff Anthony Abril is and was at all relevant times a resident of Yuma, Arizona. Plaintiff Abril was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1974 in the City of Yuma through approximately 1983 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

80.      Plaintiff John Berry is and was at all relevant times a resident of Bethalto, Illinois. Plaintiff Berry was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1976 in the City of

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

Bethalto through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

81.     Plaintiff John Deneau is and was at all relevant times a resident of Evergreen, Colorado. Plaintiff Deneau was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1998 in the City of Evergreen through approximately 2003 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

82.     Plaintiff Larry Cameron is and was at all relevant times a resident of Klamath Falls, Oregon. Plaintiff Cameron was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1976 in the City of Klamath Falls through approximately 2005 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

83.     Plaintiff Tina Knight is and was at all relevant times a resident of Campo, California. Plaintiff Knight was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1998 in the City of Campo through approximately 2012 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

84.     Plaintiff Bobby Tatum is and was at all relevant times a resident of Hampton, Arkansas. Plaintiff Tatum was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 2012 in the City of Hampton through approximately 2013 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

85.     Plaintiff Stephen Kiele is and was at all relevant times a resident of Port Angeles, Washington. Plaintiff Kiele was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1980 in the City of Port Angeles through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

86.     Plaintiff Janet Curtis is and was at all relevant times a resident of Port Angeles, Washington. Plaintiff Kiele was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1980 in the City of Port Angeles through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

87.     Plaintiff  Phyllis Nowatzke is the wife of Kenneth P. Nowatzke, deceased and lives in Michigan City, Indiana.  She is the next of kin and Personal Representative of the Estate of Kenneth P. Nowatzke, a Indiana Estate. At the time of his death, Nowatzke was a resident of Indiana. Mr. Nowatzke was first exposed in approximately 1991 in the City of Michigan City, through approximately 1992, and was diagnosed with a form of Non-Hodgkin's lymphoma. Mr. Nowatzke died of his injuries in 1997

88.     Plaintiff Lucy Napier is and was at all relevant times a resident of London, Kentucky. Plaintiff Napier was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1980 in the City of London through approximately 1996 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

89.     Plaintiff Patricia A. Goldman is and was at all relevant times a resident of Victoria, Texas. Plaintiff Goldman was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1974 in the City of Goldman through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

90.     Plaintiff Kathleen Benjamin is and was at all relevant times a resident of Battle Creek, Michigan. Plaintiff Benjamin was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 2000 in the City of Battle Creek through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

91.     Plaintiff Tonya Lyons  is and was at all relevant times a resident of Tyler, Texas. Plaintiff Lyons was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 2000 in the City of Tyler through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure..

92.     Plaintiff  Tedra Englebright  is the representative of Adam Englebright, deceased and lives in Fairfield, Illinois.  She is the next of kin and Personal Representative of the Estate of Adam Englebright,, a Illinois Estate. At the time of his death, Mr. Englebright was a resident of Illinois. Mr. Englebright was first exposed in approximately 1981 in the City of Michigan City, through approximately 1985, and was diagnosed with a form of Non-Hodgkin's lymphoma. Mr. Englebright died of his injuries in 1986

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

93.     Plaintiff Ann Jones is and was at all relevant times a resident of Winthrop, Massachusetts. Plaintiff Jones was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1997 in the City of Winthrop through approximately 2009 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

94.     Plaintiff Larry Goodman is and was at all relevant times a resident of Fullerton, California. Plaintiff Goodman was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1976 in the City of Fullerton through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

95.     Plaintiff James Johnson is and was at all relevant times a resident of New Palestine, Indiana. Plaintiff Goodman was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1976 in the City of New Palestine through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

96.     Plaintiff Carol Paulsen is and was at all relevant times a resident of Holbrook, New York. Plaintiff Paulsen  was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  She was first exposed in approximately 1975 in the City of Holbrook through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

97.     Plaintiff Robert A. Pashko is and was at all relevant times a resident of Indio, California. Plaintiff Pashko  was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1980 in the

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

City of Indio through approximately 2018 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

98.     Plaintiff Willie Dailey is and was at all relevant times a resident of Pensacola, Florida. Plaintiff Dailey was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1996 in the City of Pensacola through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

99.     Plaintiff Russel Carter is and was at all relevant times a resident of American Fork, Utah. Plaintiff Carter was exposed to, purchased and used Roundup and/or other Monsanto glyphosate-containing products ("Roundup").  He was first exposed in approximately 1981 in the City of American Fork through approximately 2017 and was diagnosed with Non Hodgkin's Lymphoma as a result of Roundup exposure.

**Defendant**

100.    Defendant Monsanto Company ("Monsanto") is a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri.

101.    At all times relevant to this petition, Monsanto was the entity that discovered the herbicidal properties of glyphosate and the manufacturer of Roundup®.

## II.      INTRODUCTION

102.    In 1970, Defendant Monsanto Company discovered the herbicidal properties of glyphosate and began marketing it in products in 1974 under the brand name Roundup®. Roundup® is a non-selective herbicide used to kill weeds that commonly compete with the growing of crops. By 2001, glyphosate had become the most-used active ingredient in American

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

agriculture with 85–90 millions of pounds used annually. That number grew to 185 million pounds by 2007. As of 2013, glyphosate was the world's most widely used herbicide.

103.    Monsanto is a multinational agricultural biotechnology corporation based in St. Louis, Missouri. It is the world's leading producer of glyphosate. As of 2009, Monsanto was the world's leading producer of seeds, accounting for 27% of the world seed market. The majority of these seeds are of the Roundup Ready® brand. The stated advantage of Roundup Ready® crops is that they substantially improve a farmer's ability to control weeds, since glyphosate can be sprayed in the fields during the growing season without harming their crops. In 2010, an estimated 70% of corn and cotton, and 90% of soybean fields in the United States were Roundup Ready®.

104.    Monsanto's glyphosate products are registered in 130 countries and approved for use on over 100 different crops. They are ubiquitous in the environment. Numerous studies confirm that glyphosate is found in rivers, streams, and groundwater in agricultural areas where Roundup® is used. It has been found in food, in the urine of agricultural workers, and even in the urine of urban dwellers who are not in direct contact with glyphosate.

105.    On March 20, 2015, the International Agency for Research on Cancer ("IARC"), an agency of the World Health Organization ("WHO"), issued an evaluation of several herbicides, including glyphosate. That evaluation was based, in part, on studies of exposures to glyphosate in several countries around the world, and it traces the health implications from exposure to glyphosate since 2001.

106.    On July 29, 2015, IARC issued the formal monograph relating to glyphosate. In that monograph, the IARC Working Group provides a thorough review of the numerous studies and data relating to glyphosate exposure in humans.

Electronically Filed - St. Louis County - May 01, 2018 - 09:50 AM

107. The IARC Working Group classified glyphosate as a Group 2A herbicide, which means that it is probably carcinogenic to humans. The IARC Working Group concluded that the cancers most associated with glyphosate exposure are non-Hodgkin lymphoma and other hematopoietic cancers, including lymphocytic lymphoma/chronic lymphocytic leukemia, B-cell lymphoma, and multiple myeloma.

108. The IARC evaluation is significant. It confirms what has been believed for years: that glyphosate is toxic to humans.

109. Nevertheless, Monsanto, since it began selling Roundup®, has represented it as safe to humans and the environment. Indeed, Monsanto has repeatedly proclaimed and continues to proclaim to the world, and particularly to United States consumers, that glyphosate-based herbicides, including Roundup®, create no unreasonable risks to human health or to the environment.

### III.    JURISDICTION AND VENUE

110. At all times relevant hereto, Monsanto was in the business of researching, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, labeling, and packaging and Monsanto was in the business of marketing, promoting, and/or advertising Roundup® products in the State of Missouri and the County of St. Louis.

111. At all times relevant hereto, Monsanto was a Delaware corporation with its headquarters and principal place of business in St. Louis, Missouri, and therefore is a local defendant for purposes of removal and diversity jurisdiction.

112. Plaintiffs have timely filed this lawsuit less than two years from the time the Plaintiffs knew or reasonably knew of the injury and that it may have been wrongfully caused.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

113.    Venue is proper in the St. Louis County pursuant to RSMo. §508.010(14) because this is a tort case in which Plaintiffs were first injured outside of Missouri, and the registered agent for Defendant Monsanto is located in St. Louis County.

## IV.    FACTS

114.    Glyphosate is a broad-spectrum, non-selective herbicide used in a wide variety of herbicidal products around the world.

115.    Plants treated with glyphosate translocate the systemic herbicide to their roots, shoot regions and fruit, where it interferes with the plant's ability to form aromatic amino acids necessary for protein synthesis. Treated plants generally die within two to three days. Because plants absorb glyphosate, it cannot be completely removed by washing or peeling produce or by milling, baking, or brewing grains.

116.    For nearly 40 years, farms across the world have used Roundup® without knowing of the dangers its use poses. That is because when Monsanto first introduced Roundup®, it touted glyphosate as a technological breakthrough: it could kill almost every weed without causing harm either to people or to the environment. Of course, history has shown that not to be true. According to the WHO, the main chemical ingredient of Roundup®—glyphosate—is a probable cause of cancer. Those most at risk are farm workers and other individuals with workplace exposure to Roundup®, such as workers in garden centers, nurseries, and landscapers. Agricultural workers are, once again, victims of corporate greed. Monsanto assured the public that Roundup® was harmless. In order to prove this, Monsanto championed falsified data and attacked legitimate studies that revealed its dangers. Monsanto led a prolonged campaign of misinformation to convince government agencies, farmers, and the general population that Roundup® was safe.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

### The Discovery of Glyphosate and Development of Roundup®

117.    The herbicidal properties of glyphosate were discovered in 1970 by Monsanto chemist John Franz. The first glyphosate-based herbicide was introduced to the market in the mid-1970s under the brand name Roundup®. From the outset, Monsanto marketed Roundup® as a "safe" general-purpose herbicide for widespread commercial and consumer use; Monsanto still markets Roundup® as safe today.

### Registration of Herbicides under Federal Law

118.    The manufacture, formulation and distribution of herbicides, such as Roundup®, are regulated under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA" or "Act"), 7 U.S.C. § 136 et seq. FIFRA requires that all pesticides be registered with the Environmental Protection Agency ("EPA" or "Agency") prior to their distribution, sale, or use, except as described by the Act. 7 U.S.C. § 136a(a).

119.    Because pesticides are toxic to plants, animals, and humans, at least to some degree, the EPA requires as part of the registration process, among other things, a variety of tests to evaluate the potential for exposure to pesticides, toxicity to people and other potential non-target organisms, and other adverse effects on the environment. Registration by the EPA, however, is not an assurance or finding of safety. The determination the Agency must make in registering or re-registering a product is not that the product is "safe," but rather that use of the product in accordance with its label directions "will not generally cause unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(D).

120.    FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide." 7 U.S.C. § 136(bb). FIFRA thus

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

requires EPA to make a risk/benefit analysis in determining whether a registration should be granted or allowed to continue to be sold in commerce.

121.    The EPA registered Roundup® for distribution, sale, and manufacture in the United States and the States of Missouri.

122.    FIFRA generally requires that the registrant, Monsanto in the case of Roundup®, conducts the health and safety testing of pesticide products. The EPA has protocols governing the conduct of tests required for registration and the laboratory practices that must be followed in conducting these tests. The data produced by the registrant must be submitted to the EPA for review and evaluation. The government is not required, nor is it able, however, to perform the product tests that are required of the manufacturer.

123.    The evaluation of each pesticide product distributed, sold, or manufactured is completed at the time the product is initially registered. The data necessary for registration of a pesticide has changed over time. The EPA is now in the process of re-evaluating all pesticide products through a Congressionally-mandated process called "re-registration." 7 U.S.C. § 136a-1. In order to reevaluate these pesticides, the EPA is demanding the completion of additional tests and the submission of data for the EPA's review and evaluation.

124.    In the case of glyphosate, and therefore Roundup®, the EPA had planned on releasing its preliminary risk assessment —in relation to the re-registration process—no later than July 2015. The EPA completed its review of glyphosate in early 2015, but it delayed releasing the risk assessment pending further review in light of the WHO's health-related findings.

*Scientific Fraud Underlying the Marketing and Sale of Glyphosate/Roundup*

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

125.    Based on early studies that glyphosate could cause cancer in laboratory animals, the EPA originally classified glyphosate as possibly carcinogenic to humans (Group C) in 1985. After pressure from Monsanto, including contrary studies it provided to the EPA, the EPA changed its classification to evidence of non-carcinogenicity in humans (Group E) in 1991. In so classifying glyphosate, however, the EPA made clear that the designation did not mean the chemical does not cause cancer: "It should be emphasized, however, that designation of an agent in Group E is based on the available evidence at the time of evaluation and should not be interpreted as a definitive conclusion that the agent will not be a carcinogen under any circumstances."

126.    On two occasions, the EPA found that the laboratories hired by Monsanto to test the toxicity of its Roundup® products for registration purposes committed fraud.

127.    In the first instance, Monsanto, in seeking initial registration of Roundup® by EPA, hired Industrial Bio-Test Laboratories ("IBT") to perform and evaluate pesticide toxicology studies relating to Roundup®. IBT performed about 30 tests on glyphosate and glyphosate-containing products, including nine of the 15 residue studies needed to register Roundup®.

128.    In 1976, the United States Food and Drug Administration ("FDA") performed an inspection of Industrial Bio-Test Industries ("IBT") that revealed discrepancies between the raw data and the final report relating to the toxicological impacts of glyphosate. The EPA subsequently audited IBT; it too found the toxicology studies conducted for the Roundup® herbicide to be invalid. An EPA reviewer stated, after finding "routine falsification of data" at IBT, that it was "hard to believe the scientific integrity of the studies when they said they took specimens of the uterus from male rabbits."

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

129.    Three top executives of IBT were convicted of fraud in 1983.

130.    In the second incident of data falsification, Monsanto hired Craven Laboratories in 1991 to perform pesticide and herbicide studies, including for Roundup®. In that same year, the owner of Craven Laboratories and three of its employees were indicted, and later convicted, of fraudulent laboratory practices in the testing of pesticides and herbicides.

131.    Despite the falsity of the tests that underlie its registration, within a few years of its launch, Monsanto was marketing Roundup® in 115 countries.

### The Importance of Roundup® to Monsanto's Market Dominance Profits

132.    The success of Roundup® was key to Monsanto's continued reputation and dominance in the marketplace. Largely due to the success of Roundup® sales, Monsanto's agriculture division was out-performing its chemicals division's operating income, and that gap increased yearly. But with its patent for glyphosate expiring in the United States in the year 2000, Monsanto needed a strategy to maintain its Roundup® market dominance and to ward off impending competition.

133.    In response, Monsanto began the development and sale of genetically engineered Roundup Ready® seeds in 1996. Since Roundup Ready® crops are resistant to glyphosate; farmers can spray Roundup® onto their fields during the growing season without harming the crop. This allowed Monsanto to expand its market for Roundup® even further; by 2000, Monsanto's biotechnology seeds were planted on more than 80 million acres worldwide and nearly 70% of American soybeans were planted from Roundup Ready® seeds. It also secured Monsanto's dominant share of the glyphosate/Roundup® market through a marketing strategy that coupled proprietary Roundup Ready® seeds with continued sales of its Roundup® herbicide.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

134.   Through a three-pronged strategy of increased production, decreased prices, and by coupling with Roundup Ready® seeds, Roundup® became Monsanto's most profitable product. In 2000, Roundup® accounted for almost $2.8 billion in sales, outselling other herbicides by a margin of five to one, and accounting for close to half of Monsanto's revenue. Today, glyphosate remains one of the world's largest herbicides by sales volume.

***Monsanto has known for decades that it falsely advertises the safety of Roundup®.***

135.   In 1996, the New York Attorney General ("NYAG") filed a lawsuit against Monsanto based on its false and misleading advertising of Roundup ® products. Specifically, the lawsuit challenged Monsanto's general representations that its spray-on glyphosate-based herbicides, including Roundup®, were "safer than table salt" and "practically non-toxic" to mammals, birds, and fish. Among the representations the NYAG found deceptive and misleading about the human and environmental safety of Roundup® are the following:

a)   Remember that environmentally friendly Roundup herbicide is biodegradable. It won't build up in the soil so you can use Roundup with confidence along customers' driveways, sidewalks and fences ...

b)   And remember that Roundup is biodegradable and won't build up in the soil. That will give you the environmental confidence you need to use Roundup everywhere you've got a weed, brush, edging or trimming problem.

c)   Roundup biodegrades into naturally occurring elements.

d)   Remember that versatile Roundup herbicide stays where you put it. That means there's no washing or leaching to harm customers' shrubs or other desirable vegetation.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

e)     This non-residual herbicide will not wash or leach in the soil. It ... stays where you apply it.

f)     You can apply Accord with "confidence because it will stay where you put it" it bonds tightly to soil particles, preventing leaching. Then, soon after application, soil microorganisms biodegrade Accord into natural products.

g)     Glyphosate is less toxic to rats than table salt following acute oral ingestion.

h)     Glyphosate's safety margin is much greater than required. It has over a 1,000-fold safety margin in food and over a 700-fold safety margin for workers who manufacture it or use it.

i)     You can feel good about using herbicides by Monsanto. They carry a toxicity category rating of 'practically non-toxic' as it pertains to mammals, birds and fish.

j)     "Roundup can be used where kids and pets will play and breaks down into natural material." This ad depicts a person with his head in the ground and a pet dog standing in an area which has been treated with Roundup.

136.    On November 19, 1996, Monsanto entered into an Assurance of Discontinuance with NYAG, in which Monsanto agreed, among other things, "to cease and desist from publishing or broadcasting any advertisements [in New York] that represent, directly or by implication" that:

a)     its glyphosate-containing pesticide products or any component thereof are safe, non-toxic, harmless or free from risk. ***

38

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

b)      its glyphosate-containing pesticide products or any component thereof manufactured, formulated, distributed or sold by Monsanto are biodegradable ***

c)      its glyphosate-containing pesticide products or any component thereof stay where they are applied under all circumstances and will not move through the environment by any means. ***

d)      its glyphosate-containing pesticide products or any component thereof are "good" for the environment or are "known for their environmental characteristics." * * *

e)      glyphosate-containing pesticide products or any component thereof are safer or less toxic than common consumer products other than herbicides;

f)      its glyphosate-containing products or any component thereof might be classified as "practically non-toxic."

137.    Monsanto did not alter its advertising in the same manner in any state other than New York, and on information and belief still has not done so today.

138.    In 2009, France's highest court ruled that Monsanto had not told the truth about the safety of Roundup®. The French court affirmed an earlier judgement that Monsanto had falsely advertised its herbicide Roundup® as "biodegradable" and that it "left the soil clean."

***Classifications and Assessments of Glyphosate***

139.    The IARC process for the classification of glyphosate followed the stringent procedures for the evaluation of a chemical agent. Over time, the IARC Monograph program has reviewed 980 agents. Of those reviewed, it has determined 116 agents to be Group 1 (Known Human Carcinogens); 73 agents to be Group 2A (Probable Human Carcinogens); 287 agents to

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

be Group 2B (Possible Human Carcinogens); 503 agents to be Group 3 (Not Classified); and one agent to be Probably Not Carcinogenic.

140.    The established procedure for IARC Monograph evaluations is described in the IARC Programme's Preamble. Evaluations are performed by panels of international experts, selected on the basis of their expertise and the absence of actual or apparent conflicts of interest.

141.    One year before the Monograph meeting, the meeting is announced and there is a call both for data and for experts. Eight months before the Monograph meeting, the Working Group membership is selected and the sections of the Monograph are developed by the Working Group members. One month prior to the Monograph meeting, the call for data is closed and the various draft sections are distributed among Working Group members for review and comment. Finally, at the Monograph meeting, the Working Group finalizes review of all literature, evaluates the evidence in each category, and completes the overall evaluation. Within two weeks after the Monograph meeting, the summary of the Working Group findings is published in Lancet Oncology, and within a year after the meeting, the final Monograph is finalized and published.

142.    In assessing an agent, the IARC Working Group reviews the following information:

a)    human, experimental, and mechanistic data;

b)    all pertinent epidemiological studies and cancer bioassays; and

c)    representative mechanistic data. The studies must be publicly available and have sufficient detail for meaningful review, and reviewers cannot be associated with the underlying study.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

143.    In March 2015, IARC reassessed glyphosate. The summary published in The Lancet Oncology reported that glyphosate is a Group 2A agent and probably carcinogenic in humans.

144.    On July 29, 2015, IARC issued its Monograph for glyphosate, Monograph 112. For Volume 112, the volume that assessed glyphosate, a Working Group of 17 experts from 11 countries met at IARC from March 3–10, 2015, to assess the carcinogenicity of certain herbicides, including glyphosate. The March meeting culminated nearly a one-year review and preparation by the IARC Secretariat and the Working Group, including a comprehensive review of the latest available scientific evidence. According to published procedures, the Working Group considered "reports that have been published or accepted for publication in the openly available scientific literature" as well as "data from governmental reports that are publicly available."

145.    The studies considered the following exposure groups: occupational exposure of farmers and tree nursery workers in the United States, forestry workers in Canada and Finland, and municipal weed-control workers in the United Kingdom; and para-occupational exposure in farming families.

146.    Glyphosate was identified as the second-most used household herbicide in the United States for weed control between 2001 and 2007 and the most heavily used herbicide in the world in 2012.

147.    Exposure pathways are identified as air (especially during spraying), water, and food. Community exposure to glyphosate is widespread and found in soil, air, surface water, and groundwater, as well as in food.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

148.    The assessment of the IARC Working Group identified several case control studies of occupational exposure in the United States, Canada, and Sweden. These studies show a human health concern from agricultural and other work-related exposure to glyphosate.

149.    The IARC Working Group found an increased risk between exposure to glyphosate and non-Hodgkin lymphoma ("NHL") and several subtypes of NHL, and the increased risk persisted after adjustment for other pesticides.

150.    The IARC Working Group also found that glyphosate caused DNA and chromosomal damage in human cells. One study in community residents reported increases in blood markers of chromosomal damage (micronuclei) after glyphosate formulations were sprayed.

151.    In male CD-1 mice, glyphosate induced a positive trend in the incidence of a rare tumor, renal tubule carcinoma. A second study reported a positive trend for haemangiosarcoma in male mice. Glyphosate increased pancreatic islet-cell adenoma in male rats in two studies. A glyphosate formulation promoted skin tumors in an initiation-promotion study in mice.

152.    The IARC Working Group also noted that glyphosate has been detected in the urine of agricultural workers, indicating absorption. Soil microbes degrade glyphosate to aminomethylphosphoric acid (AMPA). Blood AMPA detection after exposure suggests intestinal microbial metabolism in humans.

153.    The IARC Working Group further found that glyphosate and glyphosate formulations induced DNA and chromosomal damage in mammals, and in human and animal cells in utero.

154.    The IARC Working Group also noted genotoxic, hormonal, and enzymatic effects in mammals exposed to glyphosate. Essentially, glyphosate inhibits the biosynthesis of aromatic

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

amino acids, which leads to several metabolic disturbances, including the inhibition of protein and secondary product biosynthesis and general metabolic disruption.

155.    The IARC Working Group also reviewed an Agricultural Health Study, consisting of a prospective cohort of 57,311 licensed pesticide applicators in Iowa and North Carolina. While this study differed from others in that it was based on a self-administered questionnaire, the results support an association between glyphosate exposure and Multiple Myeloma, Hairy Cell Leukemia (HCL), and Chronic Lymphocytic Leukemia (CLL), in addition to several other cancers.

### Other Earlier Findings About Glyphosate's Dangers to Human Health

156.    The EPA has a technical fact sheet, as part of its Drinking Water and Health, National Primary Drinking Water Regulations publication, relating to glyphosate. This technical fact sheet predates the IARC March 20, 2015, evaluation. The fact sheet describes the release patterns for glyphosate as follows:

### Release Patterns

157.    Glyphosate is released to the environment in its use as a herbicide for controlling woody and herbaceous weeds on forestry, right-of-way, cropped and non-cropped sites. These sites may be around water and in wetlands. It may also be released to the environment during its manufacture, formulation, transport, storage, disposal, and cleanup, and from spills. Since glyphosate is not a listed chemical in the Toxics Release Inventory, data on releases during its manufacture and handling are not available. Occupational workers and home gardeners may be exposed to glyphosate by inhalation and dermal contact during spraying, mixing, and cleanup. They may also be exposed by touching soil and plants to which glyphosate was applied.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

Occupational exposure may also occur during glyphosate's manufacture, transport storage, and disposal.

158.    In 1995, the Northwest Coalition for Alternatives to Pesticides reported that in California, the state with the most comprehensive program for reporting of pesticide-caused illness, glyphosate was the third most commonly-reported cause of pesticide illness among agricultural workers.

### *Recent Worldwide Bans on Roundup®/Glyphosate*

159.    Several countries around the world have instituted bans on the sale of Roundup® and other glyphosate-containing herbicides, both before and since IARC first announced its assessment for glyphosate in March 2015, and more countries undoubtedly will follow suit as the dangers of the use of Roundup® are more widely known. The Netherlands issued a ban on all glyphosate-based herbicides in April 2014, including Roundup®, which took effect by the end of 2015. In issuing the ban, the Dutch Parliament member who introduced the successful legislation stated: "Agricultural pesticides in user-friendly packaging are sold in abundance to private persons. In garden centers, Roundup® is promoted as harmless, but unsuspecting customers have no idea what the risks of this product are. Especially children are sensitive to toxic substances and should therefore not be exposed to it."

160.    The Brazilian Public Prosecutor in the Federal District requested that the Brazilian Justice Department suspend the use of glyphosate.

161.    France banned the private sale of Roundup® and glyphosate following the IARC assessment for Glyphosate.

162.    Bermuda banned both the private and commercial sale of glyphosates, including Roundup®. The Bermuda government explained its ban as follows: "Following a recent

44

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

scientific study carried out by a leading cancer agency, the importation of weed spray 'Roundup' has been suspended."

163.    The Sri Lankan government banned the private and commercial use of glyphosates, particularly out of concern that glyphosate has been linked to fatal kidney disease in agricultural workers.

164.    The government of Columbia announced its ban on using Roundup® and glyphosate to destroy illegal plantations of coca, the raw ingredient for cocaine, because of the WHO's finding that glyphosate is probably carcinogenic.

## **EQUITABLE TOLLING OF APPLICABLE STATUTE OF LIMITATIONS**

165.    Plaintiffs incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

166.    The running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment. Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs the true risks associated with Roundup and glyphosate.

167.    At all relevant times, Defendant has maintained that Roundup is safe, non-toxic, and non-carcinogenic.

168.    Indeed, even as of July 2016, Defendant continued to represent to the public that "Regulatory authorities and independent experts around the world have reviewed numerous long-term/carcinogenicity and genotoxicity studies and *agree* that there is *no evidence* that glyphosate, the active ingredient in Roundup® brand herbicides and other glyphosate-based herbicides, causes cancer, even at very high doses, and that it is not genotoxic" (emphasis added).[1]

---

[1] Backgrounder - Glyphosate: No Evidence of Carcinogenicity. Updated November 2014. (downloaded October 9 2015)

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

169.    As a result of Defendant's actions, Plaintiffs were unaware, and could not reasonably know or have learned through reasonable diligence that Roundup and/or glyphosate contact, exposed Plaintiffs to the risks alleged herein and that those risks were the direct and proximate result of Defendant's acts and omissions.

170.    Furthermore, Defendant is estopped from relying on any statute of limitations because of its fraudulent concealment of the true character, quality and nature of Roundup. Defendant was under a duty to disclose the true character, quality, and nature of Roundup because this was non-public information over which Defendant had and continues to have exclusive control, and because Defendant knew that this information was not available to Plaintiffs or to distributors of Roundup. In addition, Defendant is estopped from relying on any statute of limitations because of its intentional concealment of these facts.

171.    Plaintiffs had no knowledge that Defendant was engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by Defendant, Plaintiffs could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud should be considered. Defendant had the ability to and did spend enormous amounts of money in furtherance of its purpose of marketing, promoting and/or distributing a profitable herbicide, notwithstanding the known or reasonably known risks. Plaintiff and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent, and identity of related health risks, and were forced to rely on only the Defendant's representations. Accordingly, Defendant is precluded by the discovery rule and/or the doctrine of fraudulent concealment from relying upon any statute of limitations.

## V.    **CLAIMS**

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

## COUNT I
## STRICT LIABILITY (DESIGN DEFECT)
## (AGAINST MONSANTO)

172.    Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

173.    Plaintiffs bring this strict liability claim against Monsanto for defective design.

174.    At all times relevant to this litigation, Monsanto engaged in the business of testing, developing, manufacturing, selling, distributing, and Monsanto engaged in the marketing, packaging design, and promotion of Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiffs, thereby placing Roundup® products into the stream of commerce. These actions were under the ultimate control and supervision of Monsanto. At all times relevant to this litigation, Monsanto designed, researched, developed, manufactured, produced, tested, assembled, labeled, advertised, promoted, marketed, sold, and distributed the Roundup® products used by the Plaintiffs, as described above.

175.    At all times relevant to this litigation, Roundup® products were manufactured, designed, and labeled in an unsafe, defective, and inherently dangerous manner that was dangerous for use by or exposure to the public, and, in particular, the Plaintiffs.

176.    At all times relevant to this litigation, Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products in Missouri and throughout the United States, including Plaintiffs, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, and marketed by Monsanto.

177.    Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation in that when they left the hands of the manufacturers and/or suppliers,

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

they were unreasonably dangerous and dangerous to an extent beyond that which an ordinary consumer would contemplate.

178.    Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation in that when they left the hands of the manufacturers and/or suppliers, the foreseeable risks exceeded the alleged benefits associated with their design and formulation.

179.    At all times relevant to this action, Monsanto knew or had reason to know that Roundup® products were defective and were inherently dangerous and unsafe when used in the manner instructed and provided by Monsanto.

180.    Therefore, at all times relevant to this litigation, Roundup® products, as researched, tested, developed, designed, licensed, manufactured, packaged, labeled, distributed, sold, and marketed by Monsanto were defective in design and formulation, in one or more of the following ways:

a)    When placed in the stream of commerce, Roundup® products were defective in design and formulation, and, consequently, dangerous to an extent beyond that which an ordinary consumer would contemplate.

b)    When placed in the stream of commerce, Roundup® products were unreasonably dangerous in that they were hazardous and posed a grave risk of cancer and other serious illnesses when used in a reasonably anticipated manner.

c)    When placed in the stream of commerce, Roundup® products contained unreasonably dangerous design defects and were not reasonably safe when used in a reasonably anticipated or intended manner.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

d)  Monsanto did not sufficiently test, investigate, or study Roundup® products and, specifically, the active ingredient glyphosate.

e)  Exposure to Roundup® and glyphosate-containing products presents a risk of harmful side effects that outweigh any potential utility stemming from the use of the herbicide.

f)  At the time of marketing its Roundup® products, Roundup® was defective in that exposure to Roundup® and specifically, its active ingredient glyphosate, could result in cancer and other severe illnesses and injuries.

g)  Monsanto did not conduct adequate post-marketing surveillance of its Roundup® products.

h)  Monsanto could have employed safer alternative designs and formulations.

181.   Plaintiffs were exposed to Roundup® products in the course of their work, as described above, without knowledge of their dangerous characteristics.

182.   At all times relevant to this litigation, Plaintiffs used and/or were exposed to the use of Roundup® products in an intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

183.   Plaintiff could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products before or at the time of exposure.

184.   The harm caused by Roundup® products far outweighed their benefit, rendering these products dangerous to an extent beyond that which an ordinary consumer would contemplate. Roundup® products were and are more dangerous than alternative products and Monsanto could have designed Roundup® products (including their packaging and sales aids) to

49

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

make them less dangerous. Indeed, at the time that Monsanto designed Roundup® products, the state of the industry's scientific knowledge was such that a less risky design or formulation was attainable.

185.    At the time Roundup® products left Monsanto's control, there was a practical, technically feasible and safer alternative design that would have prevented the harm without substantially impairing the reasonably anticipated or intended function of those herbicides.

186.    Monsanto's defective design of Roundup® products was willful, wanton, fraudulent, malicious, and conducted with reckless disregard for the health and safety of users of the Roundup® products, including the Plaintiffs herein.

187.    Therefore, as a result of the unreasonably dangerous condition of its Roundup® products, Monsanto is strictly liable to Plaintiffs.

188.    The defects in Roundup® products caused or contributed to cause Plaintiffs' grave injuries, and, but for Monsanto's misconduct and omissions, Plaintiffs would not have sustained their injuries.

189.    Monsanto's conduct, as described above, was reckless. Monsanto risked the lives of consumers and users of its products, including Plaintiffs, with knowledge of the safety problems associated with Roundup® and glyphosate-containing products, and suppressed this knowledge from the general public. Monsanto made conscious decisions not to redesign, warn, or inform the unsuspecting public. Monsanto's reckless conduct warrants an award of aggravated damages.

190.    As a direct and proximate result of Monsanto placing defective Roundup® products into the stream of commerce, Plaintiffs have suffered and continue to suffer grave

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

injuries, and have endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00), together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

**COUNT II**
**STRICT LIABILITY (FAILURE TO WARN)**
**(AGAINST MONSANTO)**

191.   Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

192.   Plaintiffs bring this strict liability claim against Monsanto for failure to warn.

193.   At all times relevant to this litigation, Monsanto engaged in the business of testing, developing, designing, manufacturing, marketing, selling, distributing, and promoting Roundup® products, which are defective and unreasonably dangerous to consumers, including Plaintiffs, because they do not contain adequate warnings or instructions concerning the dangerous characteristics of Roundup® and, specifically, the active ingredient glyphosate. These actions were under the ultimate control and supervision of Monsanto.

194.   Monsanto researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, sold, and otherwise released into the stream of commerce Roundup® products, and in the course of same, directly advertised or marketed the products to consumers and end users, including the Plaintiffs, and therefore had a duty to warn of the risks associated with the use of Roundup® and glyphosate-containing products.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

195.    At all times relevant to this litigation, Monsanto had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, maintain supply, provide proper warnings, and take such steps as necessary to ensure that Roundup® products did not cause users and consumers to suffer from unreasonable and dangerous risks. Monsanto had a continuing duty to warn the Plaintiffs of the dangers associated with Roundup® use and exposure. Monsanto, as manufacturer, seller, promoter, marketer, or distributor of chemical herbicides are held to the knowledge of an expert in the field.

196.    At the time of manufacture, Monsanto could have provided the warnings or instructions regarding the full and complete risks of Roundup® and glyphosate-containing products because it knew or should have known of the unreasonable risks of harm associated with the use of and/or exposure to such products.

197.    At all times relevant to this litigation, Monsanto failed to investigate, study, test, or promote the safety or to minimize the dangers to users and consumers of its product and to those who would foreseeably use or be harmed by these herbicides, including Plaintiffs.

198.    Despite the fact that Monsanto knew or should have known that Roundup® posed a grave risk of harm, it failed to exercise reasonable care to warn of the dangerous risks associated with use and exposure. The dangerous propensities of these products and the carcinogenic characteristics of glyphosate, as described above, were known to Monsanto, or scientifically knowable to Monsanto through appropriate research and testing by known methods, at the time it distributed, marketed, promoted, supplied, or sold the product, and not known to end users and consumers, such as Plaintiffs.

199.    These products created significant risks of serious bodily harm to consumers, as alleged herein, and Monsanto failed to adequately warn consumers and reasonably foreseeable

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

users of the risks of exposure to its products. Monsanto has wrongfully concealed information concerning the dangerous nature of Roundup® and its active ingredient glyphosate, and further made false and/or misleading statements concerning the safety of Roundup® and glyphosate.

200.    At all times relevant to this litigation, Roundup® products reached the intended consumers, handlers, and users or other persons coming into contact with these products in Missouri and throughout the United States, including Plaintiffs, without substantial change in their condition as designed, manufactured, sold, distributed, labeled, promoted, and marketed by Monsanto.

201.    Plaintiffs were exposed to Roundup® products in the course of their employment and/or personal use of Roundup, without knowledge of its dangerous characteristics.

202.    At all times relevant to this litigation, Plaintiffs used and/or were exposed to the use of Roundup® products in their intended or reasonably foreseeable manner without knowledge of their dangerous characteristics.

203.    Plaintiffs could not have reasonably discovered the defects and risks associated with Roundup® or glyphosate-containing products prior to or at the time of Plaintiffs' exposure. Plaintiffs relied upon the skill, superior knowledge, and judgment of Monsanto.

204.    These products were defective because the minimal warnings disseminated with Roundup® products were inadequate, and they failed to communicate adequate information on the dangers and safe use/exposure and failed to communicate warnings and instructions that were appropriate and adequate to render the products safe for their ordinary, intended, and reasonably foreseeable uses, including agricultural and landscaping applications.

205.    The information that Monsanto did provide or communicate failed to contain relevant warnings, hazards, and precautions that would have enabled consumers such as

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

Plaintiffs to utilize the products safely and with adequate protection. Instead, Monsanto disseminated information that was inaccurate, false, and misleading and which failed to communicate accurately or adequately the comparative severity, duration, and extent of the risk of injuries with use of and/or exposure to Roundup® and glyphosate; continued to aggressively promote the efficacy of its products, even after it knew or should have known of the unreasonable risks from use or exposure; and concealed, downplayed, or otherwise suppressed, through aggressive marketing and promotion, any information or research about the risks and dangers of exposure to Roundup® and glyphosate.

206.    To this day, Monsanto has failed to adequately and accurately warn of the true risks of Plaintiffs' injuries associated with the use of and exposure to Roundup® and its active ingredient glyphosate, a probable carcinogen.

207.    As a result of their inadequate warnings, Roundup® products were defective and unreasonably dangerous when they left the possession and/or control of Monsanto, were distributed, marketed, and promoted by Monsanto, and used by Plaintiffs in their work.

208.    Monsanto is liable to Plaintiffs for injuries caused by its negligent or willful failure, as described above, to provide adequate warnings or other clinically relevant information and data regarding the appropriate use of these products and the risks associated with the use of or exposure to Roundup® and glyphosate.

209.    The defects in Roundup® products caused or contributed to cause Plaintiffs' injuries, and, but for this misconduct and omissions, Plaintiffs would not have sustained their injuries.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

210.    Had Monsanto provided adequate warnings and instructions and properly disclosed and disseminated the risks associated with Roundup® products, Plaintiffs could have avoided the risk of developing injuries as alleged herein.

211.    As a direct and proximate result of Monsanto placing defective Roundup® products into the stream of commerce, Plaintiffs have suffered severe injuries and have endured physical pain and discomfort, as well as economic hardship, including considerable financial expenses for medical care and treatment.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

### COUNT III
### NEGLIGENCE
### (AGAINST MONSANTO)

212.    Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

213.    Monsanto, directly or indirectly, caused Roundup® products to be sold, distributed, packaged, labeled, marketed, promoted, and/or used by Plaintiffs.

214.    At all times relevant to this litigation, Monsanto had a duty to exercise reasonable care in the design, research, manufacture, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Roundup® products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that was not unreasonably dangerous to consumers and users of the product.

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

215.    At all times relevant to this litigation, Monsanto had a duty to exercise reasonable care in the marketing, advertisement, and sale of the Roundup® products. Monsanto's duty of care owed to consumers and the general public included providing accurate, true, and correct information concerning the risks of using Roundup® and appropriate, complete, and accurate warnings concerning the potential adverse effects of exposure to Roundup®, and, in particular, its active ingredient glyphosate.

216.    At all times relevant to this litigation, Monsanto knew or, in the exercise of reasonable care, should have known of the hazards and dangers of Roundup® and specifically, the carcinogenic properties of the chemical glyphosate.

217.    Accordingly, at all times relevant to this litigation, Monsanto knew or, in the exercise of reasonable care, should have known that use of or exposure to its Roundup® products could cause or be associated with Plaintiffs' injuries and thus created a dangerous and unreasonable risk of injury to the users of these products, including Plaintiffs.

218.    Monsanto also knew or, in the exercise of reasonable care, should have known that users and consumers of Roundup® were unaware of the risks and the magnitude of the risks associated with use of and/or exposure to Roundup® and glyphosate-containing products.

219.    As such, Monsanto breached the duty of reasonable care and failed to exercise ordinary care in the design, research, development, manufacture, testing, marketing, supply, promotion, advertisement, packaging, sale, and distribution of its Roundup® products, in that Monsanto manufactured, marketed, promoted, and sold defective herbicides containing the chemical glyphosate, knew or had reason to know of the defects inherent in these products, knew or had reason to know that a user's or consumer's exposure to the products created a significant

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

risk of harm and unreasonably dangerous side effects, and failed to prevent or adequately warn of these risks and injuries.

220.    Despite an ability and means to investigate, study, and test these products and to provide adequate warnings, Monsanto has failed to do so. Indeed, Monsanto has wrongfully concealed information and has further made false and/or misleading statements concerning the safety and/or exposure to Roundup® and glyphosate.

221.    Monsanto was negligent in the following respects:

a)    Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing its Roundup® products without thorough and adequate pre- and post-market testing;

b)    Manufacturing, producing, promoting, formulating, creating, developing, designing, selling, and/or distributing Roundup® while negligently and/or intentionally concealing and failing to disclose the results of trials, tests, and studies of exposure to glyphosate, and, consequently, the risk of serious harm associated with human use of and exposure to Roundup®;

c)    Failing to undertake sufficient studies and conduct necessary tests to determine whether or not Roundup® products and glyphosate-containing products were safe for their intended use in agriculture and horticulture;

d)    Failing to use reasonable and prudent care in the design, research, manufacture, and development of Roundup® products so as to avoid the risk of serious harm associated with the prevalent use of Roundup®/glyphosate as an herbicide;

e)    Failing to design and manufacture Roundup® products so as to ensure they were at least as safe and effective as other herbicides on the market;

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

f)      Failing to provide adequate instructions, guidelines, and safety precautions to those persons who Monsanto could reasonably foresee would use and be exposed to its Roundup® products;

g)      Failing to disclose to Plaintiffs, users/consumers, and the general public that use of and exposure to Roundup® presented severe risks of cancer and other grave illnesses;

h)      Failing to warn Plaintiffs, consumers, and the general public that the product's risk of harm was unreasonable and that there were safer and effective alternative herbicides available to Plaintiff and other consumers;

i)      Systematically suppressing or downplaying contrary evidence about the risks, incidence, and prevalence of the side effects of Roundup® and glyphosate-containing products;

j)      Representing that its Roundup® products were safe for their intended use when, in fact,  Monsanto knew or should have known that the products were not safe for their intended purpose;

k)      Declining to make or propose any changes to Roundup® products' labeling or other promotional materials that would alert the consumers and the general public of the risks of Roundup® and glyphosate;

l)      Advertising, marketing, and recommending the use of the Roundup® products, while concealing and failing to disclose or warn of the dangers known by Monsanto to be associated with or caused by the use of or exposure to Roundup® and glyphosate;

m)      Continuing to disseminate information to its consumers, which indicate or imply that Monsanto's Roundup® products are not unsafe for use in the agricultural and horticultural industries; and

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

n)      Continuing the manufacture and sale of its products with the knowledge that the products were unreasonably unsafe and dangerous.

222.    Monsanto knew and/or should have known that it was foreseeable that consumers such as Plaintiffs would suffer injuries as a result of Monsanto's failure to exercise ordinary care in the manufacturing, marketing, promotion, labeling, distribution, and sale of Roundup®.

223.    Plaintiffs did not know the nature and extent of the injuries that could result from the intended use of and/or exposure to Roundup® or its active ingredient glyphosate.

224.    Monsanto's negligence was the proximate cause of the injuries, harm, and economic losses that Plaintiffs suffered, as described herein.

225.    Monsanto's conduct, as described above, was reckless. Monsanto regularly risked the lives of consumers and users of its products, including Plaintiffs, with full knowledge of the dangers of these products. Monsanto has made conscious decisions not to redesign, re-label, warn, or inform the unsuspecting public, including Plaintiffs. Monsanto's reckless conduct therefore warrants an award of aggravated or punitive damages.

226.    As a proximate result of Monsanto's wrongful acts and omissions in placing defective Roundup® products into the stream of commerce without adequate warnings of the hazardous and carcinogenic nature of glyphosate, Plaintiffs have suffered severe and permanent physical and emotional injuries. Plaintiffs have endured pain and suffering and have suffered economic losses (including significant expenses for medical care and treatment) in an amount to be determined.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) together with interest, costs herein incurred, and all such other and further

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

**COUNT IV**
**(WRONGFUL DEATH)**
**(AGAINST MONSANTO)**

227.    Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

228.    Plaintiffs bring this claim on behalf of and for the benefit of the Plaintiffs Barbara Brandt, Rita Watson, Raymond Godin, Charles Rayburn Evans, Jim Williams, Andrew Lewis, Erma Hudson, Raymond Turner, Kenneth P. Nowatzke, Adam Englebright and Ruben Pena (herein after referred to as "Decedent Plaintiffs") and their lawful beneficiaries..

229.    As a direct and proximate result of the conduct of the Defendants and the defective nature of Roundup as outlined above, Decedent Plaintiffs suffered bodily injury resulting in pain and suffering, disability, disfigurement, mental anguish, loss of capacity of the enjoyment of life, shortened life expectancy, expenses for hospitalization, medical and nursing treatment, loss of earnings, loss of ability to earn, funeral expenses and death.

230.    As a direct and proximate cause of the conduct of Defendant, Decedent Plaintiffs' beneficiaries have incurred hospital, nursing and medical expenses, and estate administration expenses as a result of Decedent Plaintiffs' death. Decedent Plaintiffs brings this claim on behalf of their lawful beneficiaries for these damages and for all pecuniary losses under applicable state statutory and/or common laws.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor for compensatory and punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) together with interest, costs herein incurred, and all such other

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

**COUNT V**
**(SURVIVAL ACTION)**
**(AGAINST MONSANTO)**

197.    Plaintiffs incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully stated herein.

231.    As a direct and proximate result of the conduct of Defendant, where appropriate, Decedent Plaintiffs, prior to their death, were obligated to spend various sums of money to treat their injuries, which debts have been assumed by their Estates. As a direct and proximate cause of the aforesaid, Decedent Plaintiffs endured pain and suffering, mental anguish and impairment of the enjoyment of life, until the date of their deaths; and, as a direct and proximate result of the aforesaid, Decedent Plaintiffs lawful beneficiaries suffered a loss of earnings and earning capacity. Decedent Plaintiffs brings this claim on behalf of their respective estates under applicable state statutory and/or common laws.

232.    As a direct and proximate result of the conduct of Defendant, Decedent Plaintiffs and their spouse and heirs, until the time of their death, suffered a disintegration and deterioration of the family unit and the relationships existing therein, resulting in enhanced anguish, depression and other symptoms of psychological stress and disorder.

233.    As a direct and proximate result of the aforesaid, and including the observance of the suffering and physical deterioration of Decedent Plaintiffs until the date of their death, Decedent Plaintiffs' spouses and heirs have and will continue to suffer permanent and ongoing psychological damage which may require future psychological and medical treatment. Decedent Plaintiffs' spouses and/or heirs, Personal Representative of their respective estates, brings the

Electronically Filed - St Louis County - May 01, 2018 - 09:50 AM

claim on behalf of the estate for damages under applicable statutory and/or common laws, and in their own right.

WHEREFORE, Decedent Plaintiffs respectfully request that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) together with interest, costs herein incurred, and all such other and further relief as this Court deems just and proper. Plaintiffs also demand a jury trial on the issues contained herein.

WHEREFORE, Plaintiffs pray for judgment against Defendant for compensatory damages as set forth above and for exemplary damages for the in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) to punish Defendant, and to deter Defendant and other businesses from like conduct, and such other and further relief as this Court deems just, proper, and equitable.

## VI. JURY DEMAND

234.   PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS.

Dated:  April 30, 2018

NAPOLI SHKOLNIK PLLC.

By: /s/ Wilson D. Sikes
     Wilson D. Sikes, #69579
     Mark Twain Plaza II
     103 West Vandalia Street, Suite 125
     Edwardsville, IL 62025
     Tel: (618) 307-4528
     WSikes@Napolilaw.com
     **ATTORNEYS FOR PLAINTIFF**